# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 2:14-cr-00069-JDL-14 |
| | ) | |
| MACKENDY THENOR, | ) | |
|     Defendant. | ) | |

## ORDER ON DEFENDANT MACKENDY THENOR'S MOTION TO SUPPRESS EVIDENCE

Mackendy Thenor is charged in Count Seven of the Second Superseding Indictment with knowingly and intentionally using a cellular telephone to facilitate a drug distribution conspiracy, in violation of 21 U.S.C. § 843(b). ECF No. 531 at 5. He seeks suppression of all evidence obtained during a March 3, 2014, traffic stop in Lewiston, Maine, and all evidence obtained as a consequence of the traffic stop, including a torn plastic bag retrieved from his person after his arrest and any evidence relating to a positive alert by a police dog after his arrest. ECF No. 440 at 2. Thenor also seeks to suppress any and all records or recordings of a telephone conversation between himself and co-defendant Romelly Dastinot, which took place after Thenor's release on the evening of March 3. *Id.* For the reasons explained below, I deny the motion.

## I. FACTUAL BACKGROUND

In the early evening hours of March 3, 2014, Corporal Michael Dumond of the Lewiston Police Department was parked in a marked police cruiser in the area of Birch and Bartlett Streets in Lewiston. Corporal Dumond received radio communications asking him to stop a vehicle bearing Maine license plate 8714UA for the purpose of identifying the driver. The request came from Lewiston Police Officer Tyler Michaud and other officers who were conducting surveillance of an apartment building on Knox Street for suspected drug activity. The vehicle in question had been observed arriving at the apartment building and then departing after about ten to fifteen minutes both that day and the day before by officers conducting surveillance.

Dumond spotted and then followed the vehicle. He observed the vehicle travelling at a high rate of speed. At the intersection of Birch and Bartlett Streets, he observed the vehicle drive past a stop sign without stopping. Dumond activated his cruiser's lights and siren, and performed a traffic stop.

Upon approaching the driver's side of the vehicle, Dumond observed that the operator, whom he subsequently identified as Thenor, was extremely nervous. Thenor was shaking to such a degree that he had difficulty removing his license from his wallet. Thenor acknowledged that he had been speeding and, when questioned, explained that he had gone through the intersection without stopping because his car was prone to overheating. Thenor stuttered when he spoke, further suggesting to Dumond that Thenor was extremely nervous. Dumond also smelled marijuana from the vehicle's passenger compartment. When asked about the smell, Thenor produced

a medical marijuana prescription card and a small plastic bag containing what appeared to be marijuana.

Dumond observed Thenor reaching either into his pants pocket or toward an area below his car seat on approximately three or four occasions before Thenor exited his vehicle. On each occasion, Dumond directed Thenor not to do that and to keep his hands visible where Dumond could see them. Thenor repeatedly failed to abide by these instructions, which made Dumond nervous and caused him to suspect that Thenor might possess a weapon. Dumond called for back-up assistance and ordered Thenor out of his vehicle.

As Thenor exited his vehicle, Dumond observed him reach toward his pants. Dumond told Thenor he was going to pat him down and Thenor again reached for his pants at the waist. Dumond responded by grabbing Thenor's arm, but Thenor resisted and continued to reach toward his waist, at which point a struggle ensued. Dumond held onto Thenor's arm and shoulder as Thenor attempted to get away. In the process, Dumond observed Thenor drop a clear plastic bag to the ground. Thenor continued to resist and attempt to get away even after a back-up officer arrived on the scene and pepper-sprayed him twice. With the assistance of the back-up officer, one handcuff was placed on Thenor's wrist, but Thenor broke free before his other wrist was secured. At this point, a third officer arrived on the scene. Thenor stopped struggling after the third officer threatened him with the use of a Taser gun. Thenor was arrested for refusing to submit to detention and was taken into custody.

The entire stop lasted approximately five minutes.

## II. LEGAL ANALYSIS

Thenor argues that the traffic stop and search constituted an illegal search and seizure under the Fourth Amendment of the United States Constitution. ECF No. 440 at 1. He asserts that "any number of innocent explanations exist" for his presence at the Knox Street apartment building, and that it was neither illegal nor suspicious for him to have visited that location more than once. *Id.* at 5. Thenor also claims that the traffic stop performed by Dumond was "entirely pretextual," that Dumond lacked any articulable suspicion of any wrongdoing, and that Dumond's incident report "offers no viable basis for any arrest." *Id.* at 3 & n.3. As to his reported nervousness during the traffic stop, Thenor notes that "nervousness is inherent in police interactions with many . . . citizens (especially black citizens engaging with white officers in Lewiston)[.]" *Id.* at 3 n.3. Thenor also notes that he produced a valid medical marijuana prescription card when Dumond detected the apparent odor of marijuana. *Id.*

### A. The Traffic Stop

"A traffic stop constitutes a seizure of 'everyone in the vehicle' for purposes of the Fourth Amendment and thus must be supported by reasonable suspicion that a traffic violation has occurred." *United States v. Chaney*, 584 F.3d 20, 24 (1st Cir. 2009) (citing *Brendlin v. California*, 551 U.S. 249, 255 (2007)). Such a reasonable suspicion was present in this case. Dumond testified at the suppression hearing that he observed Thenor's car travelling at a high rate of speed, and then saw it pass a stop sign at the intersection of Birch and Bartlett Streets without stopping. Both of these traffic infractions provided Dumond with "an independently sufficient ground for

4

stopping the car." *United States v. Arnott*, 758 F.3d 40, 44 n.5 (1st Cir. 2014). Even if the stop was motivated by the decision of the police to stop Thenor's vehicle to identify the driver, such a pretextual stop is permitted so long as there is a lawful reason for the stop. *See United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011) ("An officer can stop a car if he sees a driver commit a traffic offense, even if the stop is just an excuse to investigate something else.").

**B.    Officer Dumond's Frisk of Thenor**

If a police officer "has some articulable, reasonable suspicion that the persons stopped may be dangerous, he can pat them down and search the car's interior— including closed compartments—for weapons that they could quickly lay their hands on." *Id.* (citing *Michigan v. Long*, 463 U.S. 1032, 1037 (1997)). I conclude that the totality of the circumstances in this case gave Dumond an articulable, reasonable suspicion that Thenor might be dangerous.

First, Dumond was informed by other police officers that Thenor's car had just departed from an apartment building where they suspected that drug-related transactions were occurring. This fact alone does not give rise to a reasonable suspicion that Thenor was dangerous, but it is one relevant factor to be considered, especially considering that "[t]he connection between drugs and violence is, of course, legendary." *Arnott*, 758 F.3d at 45 (quoting *United States v. Randle*, 815 F.2d 505, 508 (8th Cir. 1987)).

Second, Dumond testified that Thenor was extremely nervous, shaking to such a degree that he had difficulty removing his license from his wallet, and he stuttered

5

when he spoke. "Although nervous behavior alone is not sufficient to establish the reasonable suspicion necessary for a pat-frisk, such behavior is a relevant factor to be considered along with others in assessing the totality of the circumstances." *United States v. Mouscardy*, 722 F.3d 68, 76 (1st Cir. 2013) (citations omitted).

Third, Dumond testified that he observed Thenor repeatedly reaching either into his pants pockets or underneath his car seat, despite being instructed not to do so and despite being instructed to keep his hands visible. Dumond stated that this behavior caused him to suspect that Thenor might have a weapon. Dumond also testified that Thenor continued to reach for his pants after being ordered out of the car, and again after being informed that he was about to be frisked. Although there may have been an innocent explanation for Thenor's conduct, a "measure of deference" is owed to Dumond's "expertise in interpreting the events in this case." *United States v. Dubose*, 579 F.3d 117, 121 (1st Cir. 2009) (defendant's refusal to remove his hand from his pocket after having been ordered to do so provided additional substantiation of the police officer's suspicion); *see also, United States v. Soares*, 521 F.3d 117, 121 (1st Cir. 2008). Although "[i]t is simply not reasonable to infer that a driver is armed and dangerous because the officer[ ] believe[s] that he appears nervous," *id.* (quoting *United States v. McKoy*, 428 F.3d 38, 41 (1st Cir. 2005)), Thenor's nervousness, his insistence on reaching for his pants pocket and under his car seat, and his refusal to keep his hands visible are all relevant factors in determining whether Dumond's suspicion that Thenor might be dangerous was reasonable. *See Arnott*, 758 F.3d at 45.

6

Under the totality of the circumstances described above, Dumond's suspicion that Thenor might be armed and dangerous was reasonable. He was therefore justified in ordering Thenor out of the car and frisking him.

### III. CONCLUSION

For the foregoing reasons, Thenor's motion to suppress is **DENIED**.

**SO ORDERED.**

                                                          /s/ Jon D. Levy
                                                         U.S. District Judge

Dated: March 23, 2015